IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CYTOKINETICS, INC,

    Plaintiff,

v.

PHARM-OLAM INTERNATIONAL, LTD.,

    Defendant.

No. C 14-05256 JSW

**ORDER RE MOTION TO DISMISS AND MOTION TO TRANSFER**

Now before the Court is a motion to dismiss, or in the alternative, transfer the case, filed by Defendant Pharm-Olam International, Ltd. ("Defendant"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument, and therefore VACATES the hearing scheduled for March 20, 2015. *See* Civil L.R. 7-1(b). For the reasons that follow, the Court hereby DENIES the motion to transfer, and GRANTS IN PART AND DENIES IN PART the motion to dismiss.

**BACKGROUND**

The following facts are drawn from the complaint. Plaintiff Cytokinetics ("Plaintiff"), a clinical-stage biopharmaceutical company, is a Delaware corporation with its principal place of business in South San Francisco, California. (Compl. ¶¶ 1, 7.) Defendant, a provider of outsourced development services, is a limited partnership with global headquarters in Houston, Texas. (*Id.* ¶¶ 2, 26.) Plaintiff hired Defendant to provide a variety of services, including building and maintaining a database for one of Plaintiff's clinical studies. (*Id.* ¶ 47.)

On October 27, 2011, the parties entered into a Master Clinical Services Agreement ("the Agreement"). The Agreement was intended to permit the parties to contract for multiple projects through the creation of work orders. (Wolff Decl. Ex. D ¶ 2.) To the extent that any work order conflicted with the Agreement, the Agreement was to govern. (*Id.* ¶ 3.2.) No work order was to have the power to amend the Agreement. (*Id.*) The parties further agreed that "[t]his Agreement will be governed and construed in accordance with the laws of the State of Delaware, USA." (*Id.* ¶ 14.7(a).)

On July 16, 2012, the parties entered into a work order relating to Plaintiff's clinical study. (Compl. ¶ 46-47.) Pursuant to the work order, Defendant was to develop, validate, and maintain a database for Plaintiff. (*Id.* ¶ 48.) To do so, Defendant subcontracted with non-party Datatrack International, an Ohio corporation that maintains an office in North Carolina. The database failed, resulting in 58 patients receiving the wrong treatment. (*Id.* ¶¶ 95-98.)

On December 1, 2014, Plaintiff filed a complaint alleging three causes of action: (1) fraudulent inducement; (2) breach of contract; and (3) negligence. Defendant now moves the Court to dismiss the complaint, or in the alternative, to transfer the matter to the Middle District of North Carolina.

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

### A. Legal Standard Applicable to Motion to Transfer.

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to any district where the case could have been filed originally, for the convenience of the parties and witnesses, and in the interest of justice. The burden is on the moving party to demonstrate that the action should be transferred. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

District courts use a two-step analysis to determine whether transfer is proper. Step one considers the threshold question of whether the action might have been brought in the district to which transfer is sought. *Id.* If venue is proper in the transferee district, the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case

consideration of convenience and fairness." *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The court considers relevant factors, such as the plaintiff's choice of forum, the local interest in the issue, the relative ease of access to evidence, the availability of compulsory process for unwilling witnesses and the cost involved in securing willing witnesses, the familiarity of each forum with applicable law, and the relative court congestion in each forum. *Decker Coal. Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

**B.      Legal Standard Applicable to Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)

3

(citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss without converting a motion to dismiss to one for summary judgment. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

**C.     The Motion to Transfer is Denied.**

Defendant asks the Court to transfer this case to the Middle District of North Carolina. For the reasons that follow, the Court DENIES Defendant's motion.

In determining whether to transfer venue, the Court must first decide whether venue would have been proper in the transferee forum, here the Middle District of North Carolina. For venue to be proper in North Carolina, a substantial part of the relevant events must have occurred there. In a contract action, the Court should consider where the negotiations took place, where the contract was signed, and where any performance or breach occurred. *See DSSDR LLC v. Zenith Infotech Ltd.*, 2013 WL 57863, at *2 (N.D. Cal. Jan. 3, 2013). In a tort action, the Court should consider where the injury was felt. *Id.* It is Defendant's burden to demonstrate that the action should be transferred. *Id.* at *3.

With respect to Plaintiff's contract cause of action, Plaintiff's employees who participated in the relevant contract negotiations did so within the Northern District of California. (Wolff Decl. ¶¶ 12-13.) Plaintiff executed the Agreement in the Northern District. (*Id.* ¶ 24.) Once Plaintiff executed the Agreement, Defendant asked that it be sent to Texas, not North Carolina. (*Id.* ¶¶ 29-30, Ex. G.) The relevant work order was also negotiated and executed by Plaintiff in the Northern District. (*Id.* ¶¶ 36-40.) Once the work order was executed, Plaintiff sent it to Texas. (*Id.* ¶ 42.) Plaintiff's only office is located within the Northern District, as are all of its employees. (*Id.* ¶ 6.) In sum, all of Plaintiff's actions with respect to the contract claim took place in the Northern District of California.

Defendant contends that venue is proper in the Middle District of North Carolina because one of its employees involved in the contract negotiation resides in North Carolina, as does its non-party subcontractor. Defendant further argues that the majority of its employees who worked on the work order are located in North Carolina. The Court accepts these

4

representations as true for purposes of this motion, but finds that they do not necessarily establish that a substantial part of the events giving rise to the contract claim took place in North Carolina. Although this is a close question, the Court need not decide this issue because the Court finds that Defendant has failed to meet its burden of demonstrating that Plaintiff might have brought its tort claims in the Middle District of North Carolina.

To determine proper venue for tort claims, the Court must look to where the injury was felt. Plaintiff resides in California, its study was located in California, and any injury it incurred was felt in California. Defendant does not even attempt to argue otherwise. Thus, the Court finds that venue for Plaintiff's tort claims would not be proper in North Carolina.

To transfer only some of Plaintiff's claims and not others would result in undesirable piecemeal litigation and a waste of judicial resources. Because the Court has found that Defendant has failed to meet its burden as the moving party, the Court DENIES Defendant's motion to transfer venue.[1]

**D.    The Motion to Dismiss is Granted in Part.**

Defendant moves to the Court to dismiss all three of Plaintiff's causes of action. The Court shall address each in turn.

**1.    The Breach of Contract Claim.**

The parties agree that Delaware law governs Plaintiff's contract claim. (Opp'n at 3 n.3.) Under Delaware law, a party alleging a breach of contract must plead the following elements: (1) the existence of a contract; (2) breach of an obligation the contract imposed; and (3) resulting damages. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

---

[1] Because the Court has determined that this action could not have been brought in the Middle District of North Carolina it does not evaluate the factors relating to transfer. However, the Court is troubled by allegations that Defendant filed suit in the Middle District of North Carolina in an effort to avail itself of the first-filed rule. (*See* Eagan Decl. ¶¶ 3-10 (stating that Defendant requested a copy of Plaintiff's draft complaint – setting forth the Northern District of California as the forum – with the understanding that it would be filed by December 3, 2014 unless the matter was resolved, and that Defendant responded by preemptively filing suit in North Carolina).)

5

It is undisputed that the parties entered into a contract. Although Plaintiff contends that the contract was comprised of the combination of the Agreement and the work order, and Defendant contends that the contract was simply the Agreement, they both agree that there was a contract. The Court need not decide the scope of the contract at this time, because even under Defendant's more limited construction, Plaintiff has sufficiently alleged breaches of the Agreement. (*See* Compl. ¶¶ 125-146.) Plaintiff has also alleged that it suffered damages as a result of the alleged breaches. (*Id.* ¶¶ 149-158.) Accordingly, the Court finds that Plaintiff has sufficiently alleged a breach of contract claim, stemming at least from breach of the Agreement.

Defendant makes two arguments to the contrary. First, that the breach of contract claim is barred by the Agreement's integration clause, and second, that the Agreement specifically limits damages, which in turn precludes Plaintiff's contract cause of action.

Neither argument renders Plaintiff's breach of contract claim defective. With respect to the first argument, Defendant contends that, to the extent the alleged breaches are based on any alleged misrepresentations not directly contained in the Agreement, the integration clause bars Plaintiff from pursing its claim. (Mot. at 12.) However, the alleged breaches are not dependent upon the alleged misrepresentations, but rather upon express provisions of the Agreement itself. (*See* Compl. ¶¶ 125-146.)

With respect to the second argument, Defendant contends that the breach of contract claim is barred by the Agreement's limitation of damages clause. Specifically, Defendant argues that damages beyond service fees are only available if any breach relates to confidentiality or intellectual property. (*See* Wolff Decl. Ex. D. ¶ 12.4.) The clause provides that damages are limited "except to the extent that such damages result from the negligence, recklessness, willful misconduct or breach of an obligation relating to confidentiality or intellectual property . . . ." (*Id.*) Thus, Defendant argues that, because Plaintiff's damages are not based upon any breach related to confidentiality or intellectual property, its contract claim is barred. Plaintiff contends that the clause actually sets forth four categories of recoverable breaches, with only the last one relating to confidentiality or intellectual property.

The Court finds that this clause is ambiguous, but it need not construe this provision to rule on the instant motion. Instead, Delaware law provides that a "court must not dismiss any claim pursuant to Rule 12(b)(6) unless it appears with reasonable certainty that the plaintiff cannot prevail on any set of facts . . . ." *VLIW Tech.*, 840 A.2d at 615. In other words, "[d]ismissal . . . is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law." *Id.* (emphasis in original). The Court finds that Plaintiff's interpretation is not unreasonable, and therefore rejects Defendant's argument.

Accordingly, Defendant's motion to dismiss Plaintiff's breach of contract claim is DENIED.

### 2. The Fraudulent Inducement Claim.

Defendant moves the Court to dismiss Plaintiff's fraudulent inducement claim on several grounds: (1) that it is barred by the Agreement's integration clause; (2) that all alleged misrepresentations are either promises of future performance or mere puffery; and (3) that most of the alleged misstatements were made after the Agreement was executed and are thus not actionable.

As a preliminary matter, the parties disagree about whether Delaware or California law should govern Plaintiff's tort claims. Whether it is appropriate to decide a choice of law issue at the pleading stage depends on the facts of the individual case. *Czuchaj v. Conair Corp.*, 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014). The parties here have not provided the Court with a robust argument regarding choice of law; in its opening brief Defendant assumes that Delaware law applies to all claims, and in its opposition Plaintiff addresses choice of law in a footnote. It is only Defendant's reply brief that contains a more detailed discussion of the choice of law issue. Accordingly, the Court concludes that there are insufficient facts and briefing currently before it on this issue. The parties may raise this issue again at the appropriate time. However, for purposes of this motion, the Court will grant Defendant's motion only if Plaintiff fails to state a viable claim under either Delaware or California law. *See ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 2013 WL 6086924, at *2 (N.D. Cal. Nov. 19, 2013); *Chiquita Fresh v. Greene Transp.*, 2012 WL 1669395, at *4 (N.D. Cal. May 11, 2012).

7

The elements of a fraudulent inducement claim are essentially the same under California and Delaware law; namely that: (1) Defendant made false representations or omissions; (2) knowing they were false or with reckless disregard for their truth or falsity; (3) with the intent to induce Plaintiff to act or refrain from acting; (4) justifiable reliance; and (5) resulting injury. *See Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1331 (1986); *Black Horse Capital, L.P. v. Xseltos Holdings, Inc.*, 2014 WL 5025926, at *21 (Del. Ch. Sept. 30, 2014). To determine whether Plaintiff has sufficiently alleged a fraudulent inducement claim, the Court must first examine each of the alleged misstatements.

Plaintiff first alleges that, on March 23, 2012, Defendant's Senior Director of Business Development made the following statements in relation to a proposal for Plaintiff's upcoming study: (1) Defendant "focuses on delivering high quality data," (2) "Since 1994, we have been committed to our objective: to create value for our clients by satisfying their clinical development needs with consistent and dependable solutions and services," (3) Defendant "has created a unique Data Systems group, which performs all database development, validation and maintenance on your study EDC [electronic data capture] application," (4) "The Data Systems group ensures the timely creation and maintenance of project databases and provides technical expertise to project teams ensuring consistency among systems to avoid redundancy, inefficiency or potential problems," (5) Defendant "manages and coordinates activities of all data systems through the project cycle of all studies from study start up to archival ensuring adherence to [Defendant's] procedures and policies," and (6) Defendant "will create a study-specific database that is tested by trained [Defendant's] personnel, who perform complete validation. Test data is created to reflect both expected and unexpected data, and the database is tested for proper functioning, storage, and flow. Any errors are corrected by the database programmer and the amendments are retested." (Compl. ¶ 32 (emphasis omitted).)

The Court first notes that the alleged March 23, 2012 statements were made after the parties executed the Agreement. For purposes of this motion, the Court will find that they can only be potentially actionable to the extent they may have induced Plaintiff to enter into the work order. Unlike statements of fact, optimistic, forward-looking statements and statements of

8

puffery are not actionable. The Court finds that statements one and two, above, are mere puffery, and therefore cannot support a fraudulent inducement claim. However, statements three through six are sufficiently specific and definite to serve as the basis for this cause of action.

Plaintiff also relies upon representations made in a PowerPoint presentation on October 18, 2011. In that presentation Defendant allegedly stated that it was: (1) "responsible for delivering and maintaining accurate, complete, reliable and secure database [sic]," and (2) "responsible for the planning, organization, and coordination of data management, statistics and medical writing activities such that quality, timeliness and budget meet your expectations." (Compl. ¶ 35 (alterations and emphasis omitted).) The Court finds that these statements are too general and non-specific to form the basis of a fraudulent inducement claim.

Plaintiff further relies upon two statements found on Defendant's website; namely: (1) that Defendant "will plan and implement a quality data process that will generate accurate, complete and reliable data," and (2) that Defendant's "data management team has experience developing and deploying EDC [electronic data capture] & CDMS study systems across several leading vendors including: . . . DATATRAK . . . ." (Compl. ¶ 36.) The Court likewise finds that these statements are too general and non-specific to form the basis of a fraudulent inducement claim.

The Court has determined which of the alleged misstatements are capable of forming the basis of a fraudulent inducement claim, and must now address whether Plaintiff's claim is barred pursuant to the Agreement's integration clause. The integration clause provides that the Agreement is "the final and exclusive agreement" and that it "supersedes and terminates all prior agreements and understandings" with respect to the relevant subject matter. (Wolff Decl. Ex. D ¶ 14.15.) However, as discussed above, the viable alleged misrepresentations were made after the parties entered into the Agreement. Thus, the Court will only consider them to the extent they may have induced Plaintiff to enter into the work order. The potentially actionable statements were indisputably made before the parties executed the work order, which the parties agreed did not modify the Agreement in any way. (*Id.* ¶ 3.2.) Thus, the Court finds that the

alleged misstatements do not run afoul of the Agreement's integration clause and that the integration clause does not bar Plaintiff's fraudulent inducement claim.

With respect to the remaining elements of a fraudulent inducement claim, the Court finds that Plaintiff has sufficiently alleged that Defendant knew the alleged statements were false, that they were intended to induce reliance, that Plaintiff justifiably relied upon them in entering into the work order, and that Plaintiff was injured as a result. Accordingly, the Court GRANTS Defendant's motion with respect to the alleged misstatements the Court found non-actionable, and DENIES Defendant's motion with respect to the alleged misstatements the Court found actionable.

### 3. The Negligence Claim.

Defendant does not contend that Plaintiff fails to allege the familiar elements of a negligence claim – duty, breach, causation, and damages. Instead, Defendant moves the Court to dismiss Plaintiff's negligence claim, arguing that it is barred by the economic loss rule.

The economic loss rule provides that, to recover tort damages, a plaintiff must demonstrate injury beyond mere economic damages. *See, e.g.*, *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).[2] In some circumstances negligent performance of a contract may be actionable as a tort, and California courts have held that the economic loss rule will not apply where the contract in question involves defective services rather than defective products. *See N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 774-75 (1997); *see also id.* at 775 ("In such a hybrid circumstance, the plaintiff is entitled to pursue both legal theories until an occasion for an election of remedies arises."). Moreover, California law is unclear regarding whether defective performance of a professional services contract requires a plaintiff to plead a duty wholly independent of any contract. *See City & Cnty. of S.F. v. Cambridge Integrated Servs. Grp., Inc.*, 2007 WL 1970092, at *3 (N.D. Cal. July 2, 2007).

---

[2]As the Court noted above, it will only grant Defendant's motion if it finds that Plaintiff cannot assert a viable claim under either Delaware or California law. Thus, for purposes of Defendant's motion to dismiss Plaintiff's negligence claim, the Court will consider only California law. However, the Court notes that it is certainly not a foregone conclusion that California law will ultimately govern Plaintiff's tort claims.

10

The Court finds that Plaintiff's negligence claim is sufficient to survive this motion to dismiss. Although it may ultimately not constitute a viable claim, at this procedural posture the Court declines to bar the cause of action. *See N. Am. Chem. Co.*, 59 Cal. App. 4th at 175. Therefore, the Court DENIES Defendant's motion to dismiss Plaintiff's negligence claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss. Should Plaintiff wish to file an amended complaint, omitting the alleged misrepresentations that the Court found not actionable, it may do so by no later than April 3, 2015.

**IT IS SO ORDERED.**

Dated: March 10, 2015

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE